UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDWARD TANSEY, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> 3COM CORPORATION, ERIC A. BENHAMOU, ROBERT Y. L. MAO, RONALD A. SEGE, GARY T. DICAMILLO, JAMES R. LONG, KATHLEEN A. COTE, DOMINIQUE TREMPONT, DAVID H. Y. HO, J. DONALD SHERMAN, <br><br> Defendants. | No. <br><br><br><br><br> SHAREHOLDER CLASS ACTION COMPLAINT |

## SUMMARY OF THE ACTION

1.  This is a shareholder class action brought by plaintiff for himself and on behalf of certain holders of 3Com Corporation ("3Com" or the "Company") common stock against 3Com and certain of its officers and directors for their efforts to sell the Company to Hewlett-Packard Company ("HP") via an unfair process and at un unfair price (the "Proposed Acquisition"). In pursuing the unlawful plan to solicit shareholder approval of their proposed sale of 3Com via an unfair process, each of the defendants violated applicable law by directly breaching and/or aiding the other defendants' breaches of their fiduciary duties of loyalty, due care, candor, independence, good faith, and fair dealing, and have aided and abetted 3Com's officers and directors' breaches of fiduciary duties. Instead of attempting to negotiate a contract realizing the highest value reasonably available for the Company's shareholders, defendants have undertaken to tailor their proposed sale of 3Com to meet their own personal objectives.

2.  Because defendants dominate and control the business and corporate affairs of 3Com and are in possession of private corporate information concerning 3Com's assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of 3Com, which makes it inherently unfair for them to execute and pursue any proposed merger agreement under which they will reap disproportionate benefits to the exclusion of obtaining the best reasonable stockholder value. Nonetheless,

instead of attempting to negotiate a contract reflecting the best consideration reasonably available for the Company's stockholders, defendants spent a substantial effort tailoring the Proposed Acquisition to meet their specific needs and the needs of 3Com.

3. In short, the Proposed Acquisition is designed to unlawfully divest 3Com's public stockholders of the Company's valuable assets for grossly inadequate consideration. Defendants know that these assets will continue to produce substantial revenue and earnings.

4. Plaintiff brings claims against defendants for acts and omissions in violation of fiduciary duties of loyalty, diligence, candor, and good faith. Defendants, among other things, failed to take the offer that reflected the best value reasonably available for 3Com shareholders and placed their own personal interests ahead of those of the Company's shareholders.

5. To remedy defendants' breaches of fiduciary duty and other misconduct, plaintiff seeks, *inter alia*: (i) injunctive relief preventing consummation of the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process to obtain a transaction that provides the best possible terms for shareholders; (ii) a directive to the individual defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of 3Com's shareholders; and (iii) rescission of, to the extent already implemented, the Proposed Acquisition agreement or any of the terms thereof.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332 in that plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. This action is not a collusive action designed to confer jurisdiction on this court of a court of the United States that it would not otherwise have.

7. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this

District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) 3Com maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to 3Com, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**PARTIES**

9. Plaintiff Edward Tansey is a shareholder of 3Com. Plaintiff is a citizen of Maine.

10. Defendant 3Com is a global enterprise networking solutions provider. 3Com has three global product and solutions brands: H3C, 3Com, and TippingPoint. 3Com is incorporated in Delaware and is located at 350 Campus Drive, Marlborough, Massachusetts.

11. Defendant Eric A. Benhamou ("Benhamou") is Chairman of the Board. Benhamou is a citizen of California.

12. Defendant Robert Y. L. Mao ("Mao") is the Chief Executive Officer and a director of 3Com. Mao is a citizen of California.

13. Defendant Ronald A. Sege ("Sege") is the President, Chief Operating Officer, and a director of 3Com. Sege is a citizen of California.

14. Defendant Gary T. DiCamillo ("DiCamillo") is a 3Com director. DiCamillo is a citizen of Massachusetts.

15. Defendant James R. Long ("Long") is a 3Com director. Long is a citizen of Florida.

16. Defendant Kathleen A. Cote ("Cote") is 3Com director. Cote is a citizen of Florida and/or Massachusetts.

17. Defendant Dominique Trempont ("Trempont") is 3Com director. Trempont is a citizen of California.

18. Defendant David H. Y. Ho ("Ho") is a 3Com director. Ho is a citizen of China.

19. Defendant J. Donald Sherman ("Sherman") is a 3Com director. Sherman is a citizen of Massachusetts and/or Connecticut.

20. The defendants named above in ¶¶11-19 are sometimes collectively referred to herein as the "Individual Defendants."

## DEFENDANTS' FIDUCIARY DUTIES

21. Under Delaware law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in a change in corporate control, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, including a significant control premium. This duty arises either: (i) when a corporation initiates an active bidding process seeking to sell itself or to effect a business reorganization involving a clear break-up of the company; (ii) where, in response to a bidder's offer, a target abandons its long-term strategy and seeks an alternative transaction involving the break-up of the company; or (iii) when approval of a transaction results in a sale or change of control. To diligently comply with these duties, neither the directors nor the officers may take any action that:

   (a) adversely affects the value provided to the corporation's shareholders;

   (b) will discourage, inhibit or deter alternative offers to purchase control of the corporation or its assets;

   (c) contractually prohibits themselves from complying with their fiduciary duties;

   (d) will otherwise adversely affect their duty to secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

   (e) will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

22.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of 3Com, are obligated under Delaware law to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

23.     Also under Delaware law, the Individual Defendants owed a duty of candor to 3Com's shareholders to disclose all material information when seeking their approval of the Proposed Acquisition. Any misleading statements or omissions in communications with shareholders regarding their vote are a breach of this duty of candor.

24.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Acquisition, are knowingly or recklessly violating their fiduciary duties and aiding and abetting such breaches, including their duties of loyalty, candor, good faith, and independence owed to plaintiff and other public shareholders of 3Com. The Individual Defendants stand on both sides of the transaction, are engaging in self-dealing, are obtaining for themselves personal benefits, including personal financial benefits not shared equally by plaintiff or the Class (as defined herein), and are choosing not to provide shareholders with all information necessary to make an informed decision in connection with the Proposed Acquisition. As a result of the Individual Defendants' self-dealing and divided loyalties, neither plaintiff nor the Class will receive adequate or fair value for their 3Com common stock in the Proposed Acquisition or complete disclosure concerning such value and the Proposed Acquisition.

25.     Because the Individual Defendants are knowingly or recklessly breaching their duties of loyalty, candor, good faith, and independence in connection with the Proposed

Acquisition, the burden of proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its negotiation, structure, price, and terms, is placed upon defendants as a matter of law.

## THE ACQUISITION

26.     On November 11, 2009, 3Com and HP jointly issued the following press release announcing that the Individual Defendants had agreed to sell 3Com to HP in a cash deal valuing the Company at $7.90 per share. The press release states in relevant part:

> HP and 3Com Corporation today announced that they have entered into a definitive agreement under which HP will purchase 3Com, a leading provider of networking switching, routing and security solutions, at a price of $7.90 per share in cash or an enterprise value of approximately $2.7 billion. The terms of the transaction have been approved by the HP and 3Com boards of directors.
>
> * * *
>
> The acquisition of 3Com will dramatically expand HP's Ethernet switching offerings, add routing solutions and significantly strengthen the company's position in China – one of the world's fastest-growing markets – via the H3C offerings. In addition, the combination will add a large and talented research and development team in China that will drive the acceleration of innovations to HP's networking solutions.
>
> 3Com also brings to HP best-of-breed network security capabilities through its TippingPoint portfolio. For the past four years, TippingPoint has been the leader in Gartner's "Magic Quadrant" in its evaluation of leading network security products. Approximately 30 percent of the Fortune 1000 companies have already deployed TippingPoint intrusion prevention systems.
>
> * * *
>
> Under the terms of the merger agreement, 3Com stockholders will receive $7.90 for each share of 3Com common stock that they hold at the closing of the merger. The acquisition is subject to customary closing conditions, including the receipt of domestic and foreign regulatory approvals and the approval of 3Com's stockholders. The transaction is expected to close in the first half of calendar 2010.

27.     3Com has implemented a "China Out" business strategy designed to bring its product portfolio to the global marketplace. This strategy is designed to leverage a strong local "home market" position built on the design, manufacture, and sale of large-scale, high-volume deployments in China, then to expand globally. 3Com provides a solid foothold for a buyer to

enter the Chinese market. For example, 3Com derives about 52% of its $1.3 billion in revenue from China; controls a 32% share of the Ethernet switching market in China; most of 3Com's 6,000 employees reside in China; and nearly all of its research and development staff are in China.

28. According to 3Com and HP's joint press release, 3Com's substantial presence in China is what drove HP to acquire 3Com because 3Com would "significantly strengthen the company's position in China – one of the world's fastest-growing markets."

29. 3Com's expanding Chinese market share has attracted potential suitors in the past. For example, in 2007, Bain Capital Partners, LLC ("Bain") and Huawei Technologies Co. ("Huawei") attempted to acquire 3Com at a price of $5.30 per share. Eventually in March of 2008, the transaction fell apart due to national security concerns of the U.S. government. The previous transaction with Bain and Huawei indicates that 3Com's Chinese network is a valuable bargaining chip that the Individual Defendants should have used to obtain the highest reasonable value for the Company's shares.

30. After the Bain and Huawei transaction fell apart, 3Com looked inward to find its future and began focusing on growth within the Company and not strategic alternatives. Only three months after the Bain and Huawei transaction fell apart, on June 24, 2008, 3Com beat the street forecast of $315 million in revenue and reported $321.3 million. As a result, 3Com's shares rose 7%. A June 24, 2008 Reuters article described how 3Com would continue to grow by expanding its market share outside of China. The article stated, "3Com achieved market parity with Cisco" in China and that the Company's fourth quarter results showed that 3Com's revenue was beginning to grow "in Europe, Middle East and Africa (EMEA), where combined regional sales rose 11 percent from a year earlier to $74.2 million."

31. Only six months after the Bain and Huawei transaction fell apart, defendant Mao stated in the Company's first quarter 2009 earnings press release that, "[o]verall this was an excellent quarter for 3Com as we achieved GAAP profitability.... In addition, we delivered our three key objectives in the quarter: solid year-over-year revenue growth, improved profit margins, including record gross margins again, and strong cash generation." As 3Com emerged

from the Bain disaster, the market began to take notice. A Kaufman Bros. analyst stated in a September 23, 2008 analyst report that "[t]his was the second consecutive quarter that 3Com exceeded expectations and gave positive guidance, thereby enhancing management credibility and demonstrating execution despite the challenging macroeconomic environment." Since the Bain deal fell through, there has been no need for the Company to seek strategic alternatives as a result of their growing business operations.

32. In a February 25, 2009 Goldman Sachs Technology and Internet Conference, the Company's Chief Financial Officer Jay Zager ("Zager"), reiterated that the Company was strong and profitable, stating:

> Today, [we are] about a $1.4 billion company. We've been increasing our profitability. We went from an operating loss in 2006 of about $68 million, profitable in 2007 for about $27 million, profitable in 2008 for about $70 million, and the first half of our fiscal year 2009, $75 million. So we're on the right track. Our balance sheet is strong. We have over $0.5 billion of cash. Our debt is now down to about $213 million. So we have the financial acumen or the financial ability to make the investments we need to continue to grow the company. And that's really the challenge for us in what's obviously a difficult economic environment, to manage very carefully and balance the opportunities we see to leverage our product strengths, combined with the fact that the economies are difficult and we're taking a more cautious attitude than we normally might take. But, in general, we feel that we're poised to do some very good things and we expect to see continued success in the future.

33. In a June 9, 2009 UBS Technology and Service conference call, Zager again emphasized the Company's strength and stated:

> Our balance sheet is strong and getting stronger. We ended our third quarter with about $560 million in cash and our debt right now is down to $200 million. It was $213 million at the end of the quarter. We actually paid out $13 million in debt early in Q4. We are generating cash this year. We will generate in excess of $200 million of cash from our business. And so it gives us the flexibility to ride out difficult economic times and to make the critical investments that we believe we need as we go forward.

34. While the Company is beginning to expand internationally and grow its market share and revenue, the Individual Defendants are now trying to sell 3Com at an inadequate price that will not maximize shareholder value.

35. It is unclear what actions, however, if any, 3Com took to utilize that valuable bargaining chip of their Chinese market share to solicit competing bids from competitors.

Potential suitors included Cisco Systems, Inc., a networking and communications company, and Nortel Networks Corporation, which previously attempted to purchase 3Com in 2007. 3Com's market is growing incessantly fast and provides a platform for other technological companies who seek to enter a new market or expand in an already established networking market. Indeed, on the November 11, 2009 conference call, held by HP to discuss the Proposed Acquisition, HP emphasized how the networking market was a catalyst to enter the Proposed Acquisition because the Proposed Acquisition "creates a new global networking leader in what is a $40 billion market opportunity." As such, there are numerous other potential suitors for 3Com.

## SELF-DEALING

36. By reason of their positions with 3Com, the Individual Defendants are in possession of non-public information concerning the financial condition and prospects of 3Com, and especially the true value and expected increased future value of 3Com and its assets, which they have not disclosed to 3Com's public stockholders. Moreover, despite their duty to obtain the best reasonably available shareholder value, the defendants have clear and material conflicts of interest and are acting to better their own interests at the expense of 3Com's public shareholders.

37. The proposed sale is wrongful, unfair, and harmful to 3Com's public stockholders, and represents an effort by defendants to aggrandize their own financial position and interests at the expense of and to the detriment of Class members. Specifically, defendants are attempting to deny plaintiff and the Class (as defined herein) their shareholder rights via the sale of 3Com on terms that do not adequately value the Company. Accordingly, the Proposed Acquisition will only benefit defendants and HP.

38. In light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

- Withdraw their consent to the sale of 3Com and allow the shares to trade freely – without impediments;

- Act independently so that the interests of 3Com's public stockholders will be protected;

- Adequately ensure that no conflicts of interest exist between defendants' own interests and their fiduciary obligation to maximize stockholder value

> or, if such conflicts exist, to ensure that all conflicts be resolved in the best interests of 3Com's public stockholders; and

- Solicit competing bids to HP's offer to assure that the Company's shareholders are receiving the best reasonably obtainable value for their shares.

39. Defendants Mao and Sege stand to reap substantial benefits from the Proposed Acquisition. According to the 3Com's August 7, 2009 Form Schedule 14A, defendant Mao will receive approximately $11 million in total compensation if the Proposed Acquisition is consummated. Defendant Sege will receive approximately $8 million in total compensation if the Proposed Acquisition is consummated.

## DEFENDANTS FAILED TO OBTAIN THE BEST REASONABLE SHAREHOLDER VALUE

40. As a result of defendants' conduct, 3Com's public stockholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company. In order to meet their fiduciary duties, defendants are obligated to explore transactions that will obtain the best shareholder value reasonably available, not structure a preferential deal for themselves.

41. The $7.90 per share offer price does not reflect the true inherent value of the Company that was known only to defendants, as directors and officers of 3Com, at the time the Proposed Acquisition was announced.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action on his own behalf and pursuant to Rule 23 of the Federal Rules of Civil Procedure as a class action on behalf of all holders of 3Com stock who are being and will be harmed by defendants' actions described herein (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

43. This action is properly maintainable as a class action.

44. The Class is so numerous that joinder of all members is impracticable. According to 3Com's U.S. Securities and Exchange Commission filings, there were more than 392 million shares of 3Com common stock outstanding as of September 25, 2009.

45. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a) whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(b) whether 3Com aided and abetted the Individual Defendants' breaches of fiduciary duty;

(c) whether the Individual Defendants are engaging in self-dealing in connection with the Proposed Acquisition;

(d) whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonably available under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(e) whether the Individual Defendants are unjustly enriching themselves and other insiders or affiliates of 3Com;

(f) whether the Individual Defendants have breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, honesty, and fair dealing;

(g) whether the Individual Defendants have breached their fiduciary duties of candor to plaintiff and the other members of the Class in connection with the Proposed Acquisition by soliciting shareholder vote in favor of the Proposed Acquisition contract based upon inadequate disclosures;

(h) whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets; and

(i) whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

46. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

47. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

48. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

49. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

50. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

### Claim for Breach of Fiduciary Duties Against the Individual Defendants

51. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

52. The Individual Defendants have violated the fiduciary duties of care, loyalty, good faith, and independence owed to the public shareholders of 3Com and have acted to put their personal interests ahead of the interests of 3Com's shareholders.

53. By the acts, transactions, and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value inherent in and arising from 3Com.

54. The Individual Defendants have violated their fiduciary duties by entering 3Com into the Proposed Acquisition contract without regard to the effect of the proposed transaction on 3Com's shareholders.

55. As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, and independence owed to the shareholders of 3Com because, among other reasons:

(a) they failed to take steps to maximize the value of 3Com to its public shareholders;

(b) they failed to properly value 3Com and its various assets and operations; and

(c) they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Acquisition.

56. Because the Individual Defendants dominate and control the business and corporate affairs of 3Com, and are in possession of private corporate information concerning 3Com's assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of 3Com which makes it inherently unfair for them to pursue and recommend any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing shareholder value.

57. By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

58. Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the Class, and may consummate the Proposed Acquisition which will exclude the Class from its fair share of 3Com's valuable assets and operations, and/or benefit defendants in the unfair manner complained of herein, all to the irreparable harm of the Class.

59. The Individual Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

60. As a result of the Individual Defendants' unlawful actions, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive their fair portion of the value of 3Com's assets and operations. Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed

Acquisition terms, and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

61.  Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## COUNT II

### Claim for Aiding and Abetting Breaches of Fiduciary Duty Against 3Com

62.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

63.  Defendant 3Com aided and abetted the Individual Defendants in breaching their fiduciary duties owed to the public shareholders of 3Com, including plaintiff and the members of the Class.

64.  The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

65.  By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

66.  3Com colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and was an active and knowing participant in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

67.  Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A.  Declaring that this action is properly maintainable as a class action;

B.  Declaring and decreeing that the Proposed Acquisition was entered into in violation of the fiduciary duties of defendants and is therefore unlawful and unenforceable;

C. Enjoining defendants, their agents, counsel, employees, and all persons acting with them or on their behalf from consummating the Proposed Acquisition, unless and until the Company adopts and implements a fair process designed to obtain the best value reasonably available to shareholders;

D. Disclosing all material information necessary for shareholders to make an informed vote;

E. Directing the Individual Defendants to exercise their fiduciary duties to pursue the strategic alternative in the best interests of 3Com's shareholders;

F. Rescinding, to the extent already implemented, the Proposed Acquisition;

G. Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees and expenses; and

H. Granting such other and further relief as this Court may deem just and proper.

DATED: November 12, 2009

PARTRIDGE, ANKNER & HORSTMANN, LLP
TERENCE K. ANKNER

TERENCE K. ANKNER
BBO No. 552469
The Berkeley Building
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone: (617) 859-9999
Facsimile: (617) 859-9998

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
MARC M. UMEDA
S. BENJAMIN ROZWOOD
DAVID L. MARTIN
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for Plaintiff